# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JO ANNA PRTIZ, )<br> )<br> Plaintiff, )<br> )<br>v. )<br> )<br>COMMISSIONER OF SOCIAL )<br>SECURITY ADMINISTRATION, )<br> )<br> Defendant. ) | Case No. CIV-17-0224-SM |

## MEMORANDUM OPINION AND ORDER

Jo Anna Pritz (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 8, 14.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

### C. Relevant findings.

After remand from the Appeals Council, the ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not

met her burden of proof. AR 443-456; *see* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by obesity, second, by hypertension, third, by major depressive disorder, fourth, by status post cerebral vascular accident, fifth, by vision disorder in right eye, sixth, by left vertebral artery occlusion, seventh, by panic disorder without agoraphobia, eighth , by dysthymic disorder, and ninth, by posttraumatic stress disorder;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with additional limitations, particularly that she can occasionally climb ramps, stairs, balance, stoop, kneel, crouch, and crawl, cannot climb ladders, ropes, or scaffolds, can read small and large print and can work with small and large objects, can avoid ordinary hazards in the workplace but still must avoid even moderate exposure to hazards, such as unprotected heights and heavy machinery, must avoid environments with moving objects approaching from the right, can understand, remember, and carry out simple, routine, and repetitive tasks, can relate to supervisors and coworkers on a superficial work basis, can respond to usual work situations, and can have no contact with the general public;

(4) could not perform her past relevant work;

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

(5) could perform jobs that exist in significant numbers in the national economy, such as collator operator, routing clerk, and mail sorter; and so,

(6) had not been under a disability, as defined in the Social Security Act, from April 8, 2010 through June 27, 2016.

AR 446-56.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council reviewed Plaintiff's written exceptions and determined they, in consideration with the entire record, provided no basis for changing the ALJ's decision. *Id.* at 432; *see also id.* at 432-36. The ALJ's decision is thus the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court "cannot reweigh the evidence or substitute [its] judgment

4

for that of the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

**B.     Plaintiff's claims of error.**

Plaintiff argues the ALJ committed legal error when he (1) failed to "recognize all of [her] psychological impairments"; and (2) "did not properly consider all of her physical impairments, notably the impact of her visual problems and her poor balance." Doc. 18, at 3, 9.

### C. Whether the ALJ erred in "recognizing all of [Plaintiff's] psychological impairments." *Id*. at 3-9.

#### 1. Legal standards.

"[O]nce a mental impairment is considered to be severe, it must be included in the residual functional capacity assessment[.]" *Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). The ALJ must take into account "[a]ll medically determinable impairments, including non-severe impairments . . in assessing a claimant's RFC." *Mushero v. Astrue*, 384 F. App'x 693, 695 (10th Cir. 2010) (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("[T]o the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis.") The RFC need only include such limitations as the medical record substantially supports. *See Arles v. Astrue*, 438 F. App'x 735, 740 (10th Cir. 2011) (rejecting plaintiff's claim that a limitation should have been included in his RFC because "such a limitation has no support in the record").

Plaintiff alleges that "ALJ's limitation to simple work and no working around the general public" fails to address her "obvious psychological problems, and her cognitive disorder." Doc. 18, at 4. The ALJ noted she has "moderate restriction" in her activities of daily living, and "moderate difficulties" in social functioning and concentration, persistence, or pace. AR 449. She has

6

experienced "no episodes of decompensation." *Id.* at 450. He noted Plaintiff "achieved a score of 23 of 30 possible points on the [Montreal Cognitive Assessment (MOCA)], suggesting the presence of cognitive problems." *Id.* at 448. And he noted Plaintiff's 2013 Global Assessment of Functioning [GAF] score "was 45, in the serious symptom range." *Id.*

Dr. Ray Hand administered the MOCA, an objective test. AR 1100. Her score of 23 suggested a cognitive impairment. *Id.*; *see also Ireland v. Colvin*, No. CIV.A. 14-1012-JWL, 2014 WL 7185008, at *4 (D. Kan. Dec. 16, 2014) (where speech-language pathologist "performed a [MOCA] of Plaintiff, who scored 23 of 30 on the assessment, suggesting mild cognitive impairment.") (citing *http://www.mocatest.org/normative—data.asp*). The ALJ acknowledged Dr. Hand's statement that Plaintiff's "most likely [Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)] diagnoses are cognitive disorder NOS (not otherwise specified), major depression, and post-traumatic stress disorder." AR 448, 1101.[3] Plaintiff argues that the ALJ erred in not limiting her RFC to account for this score, for her Montreal Cognitive

---

[3] To the extent the ALJ should have included a diagnosis of cognitive disorder NOS as a severe mental impairment, Doc. 18, at 7, the Commissioner is correct any error here was harmless. *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (stating any error "is not reversible" because "the ALJ proceed[ed] further to evaluate other impairments" in the remaining steps of the sequential evaluation).

Assessment score, and for her cognitive disorder. *Id.* The undersigned again disagrees.

Plaintiff takes issue with the ALJ's heavy reliance on the state-agency physicians' opinions, who, she argues, "ignore[d her] abnormal cognitive findings." Doc. 23, at 2. The ALJ documented his psychological review technique findings and noted the RFC "reflects the degree of limitation" found in his mental function analysis. AR 450. The ALJ gave great weight to the psychological review technique form and mental RFC assessments the state agency consultants performed. *Id.* at 453. These assessments contain a series of questions that are directed at determining the ability to perform sustained work activities. *See id.* at 364-66, 368-80, 393, 565-623. Those questions include the ability to understand, remember, and carry out instructions of varying degrees of complexity as well as a number of other work-related abilities. *Id.* at 364-65, 378, 574-75, 588-89, 604-05, 620-21. The state-agency physicians also considered her MOCA results. *Id.* at 570, 584, 600, 616. The consultants summarized their mental RFC conclusions as including Plaintiff's ability to perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation. *Id.* at 366, 574-75, 588-89, 604-05, 620-21. The ALJ included the same mental limitations in the RFC, although phrased slightly differently. *Id.* at 450. Substantial

evidence supports the ALJ's RFC assessment.[4]

Plaintiff also argues that although the ALJ mentioned the GAF scores (a 2010 score of 57 and a 2013 score of 45), he failed to incorporate them into his decision. Doc. 18, at 6-7; AR 448, 447). As to the ALJ's treatment of the GAF score, the ALJ stated: "[A]s it pertains to vocational capacity, a GAF rating, standing by itself, has little probative value." AR 453.

"The GAF is a 100-point scale divided into ten numerical ranges, which permits clinicians to assign a single ranged score to a person's psychological, social, and occupational functioning." *Keyes-Zachary*, 695 F.3d at 1162 n.1. A GAF score of 41-50 indicates "'[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school function (e.g., no friends, unable to keep a job).'" *Keyes-Zachary,* 695 F.3d at 1162 n.1 (quoting DSM-IV-TR at 34). A score of 51-60 indicates "'[m]oderate symptoms (e.g., flat affect and circumstantial speech,

---

[4] To the extent Plaintiff argues the ALJ did not adequately consider her moderate limitations of social functioning and concentration, persistence, or pace, substantial evidence supports the ALJ's RFC assessment on that score as well. AR 366, 574-75, 588-89, 604-05, 620-21; 450; *see Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013) "[An] ALJ's finding of 'moderate difficulties' in social functioning in the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment," so, the ALJ "was under no obligation to include limitations in social functioning in [Plaintiff's] RFC based solely on his finding that she had 'moderate difficulties' in social functioning as part of the distinct step-three analysis.").

occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" *Id.*

A low GAF score, standing alone, is insufficient to prove disability: "[T]he Commissioner does not consider GAF scores to have a direct correlation to the severity requirements in the mental disorders listings, and the [DSM-IV], has discontinued its use because of its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Rose v. Colvin*, 634 F. App'x 632, 636 (10th Cir. 2015) (internal quotation marks and citations omitted); *see also Butler v. Astrue*, 412 F. App'x 144, 147 (10th Cir. 2011) (noting that GAF scores that are not "linked to any work-related limitations . . . are not particularly helpful" and cannot alone determine disability). Plaintiff's citation to the GAF scores, without more, does not show that the GAF score was "significantly probative" or that the ALJ's omission of further discussion of this score undermined the RFC determination. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir.1996) (noting that an ALJ "is not required to discuss every piece of evidence" but must discuss "evidence supporting his decision," "uncontroverted evidence he chooses not to rely upon," and "significantly probative evidence he rejects").

Plaintiff can point to no medical evidence of record indicating GAF scores affected her functional abilities. In considering the GAF scores, the ALJ "looked to other factors," including mental status examinations, credible

medical opinions of record, medical findings of record, and his resolution of Plaintiff's credibility. AR 453. Substantial evidence supports the ALJ's RFC formulation.

The court finds the ALJ considered Plaintiff's severe and non-severe mental impairments throughout the sequential evaluation process, performed the proper analysis under step four, and that substantial evidence supports the RFC findings of the ALJ.

> **D. Whether the ALJ "properly consider[ed Plaintiff's] physical impairments, notably the impact of her visual problems and her poor balance."** Doc. 18, at 9-12.
>
> **1. Visual acuity.**

The ALJ's RFC noted Plaintiff "can read small and large print and can work with small and large objects," she must "avoid even moderate exposure to hazards, such as unprotected heights and heavy machinery," and she "must avoid environments with moving objects approaching from the right." AR 450. The ALJ asked the vocational expert to identify jobs with such limitations, and the vocational expert identified collator operator, DOT No. 208.685-010, routing clerk, DOT No. 222.587-038, and mail sorter, DOT No. 222.687-022. [5] *Id.* at 455.

---

[5] The Dictionary of Occupational Titles or "DOT" as published by the Department of Labor is one of several publications from which the Social Security Administration "will take administrative notice of reliable job information." 20 C.F.R. § 404.1566(d)(1).

Plaintiff argues the DOT's collator-operator definition is flawed as it suggests a "blind person" could perform the job. Doc. 18, at 10. As the Commissioner points out, the Selected Characteristics of Occupations Defined in the Revised DOT App. C, No. 15 (U.S. Dep't of Labor, Employment & Training Admin. 1993) defines "near acuity" as "clarity of vision at 20 inches or less," and "far acuity" as "clarity of vision at 20 feet or more." Doc. 22, at 14 n.5. The DOT does not rate acuity at distances between twenty inches and twenty feet. *See* Selected Characteristics of Occupations Defined in the Revised DOT App. C, No. 15. "The Commissioner accepts the DOT's definitions as reliable evidence at step four of 'the functional demands and job duties' of a claimant's past job 'as it is usually performed in the national economy.'" *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir.1999) (quoting SSR 82-61, 1982 WL 31387, at *2); *see* 20 C.F.R. § 404.1566(d)(1).

With respect to the change in her left temporal field of vision, Doc. 23, at 2-3, Doc. 18, at 10-11, the ALJ acknowledged the ophthalmologist's consultative exam and the doctor's recommendation of bifocal glasses. AR 448, 1119. The ALJ did not err by not including in the RFC assessment limitations that the record did not support. *See Qualls v. Apfel*, 206 F.3d 1368, 1372-73 (10th Cir. 2000).

Plaintiff also argues the ALJ ignored her subjective complaints of intermittent ability to use her vision, impairment of near vision, peripheral

12

vision loss, a blind spot in her right eye, poor depth perception, and eye fatigue, and the need to use large print to read. Doc. 18, at 10. Elsewhere in the decision, the ALJ discounted Plaintiff's credibility, finding it "not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 454, 451; *see Barnhill-Stemley v. Colvin*, 607 F. App'x 811, 817 (10th Cir. 2015) (ALJ properly discounted claimant's descriptions of the severity and disabling effect of her limitations based on "lack of medical evidence to support the subjective nature of her reported symptoms and discrepancies between her statements and the medical evidence"). And Plaintiff does not challenge the ALJ's credibility assessment.

### 2. Balance and medication side effects.

As to Plaintiff's balance issues and medication side effects, to the extent Plaintiff relies on her testimony, the ALJ discounted her credibility, which Plaintiff does not challenge. AR 451, 454. She points to Dr. Robin Hall's assessment of her weak toe and heel walking, secondary to poor balance. Doc. 18, at 11; Doc. 23, at 3; AR 1088. Dr. Hall also noted Plaintiff "ambulates with a stable, steady and safe gait at a slow speed without the use of any assistive devices." AR 1088. Substantial evidence supports the ALJ's consideration of Plaintiff's physical impairments and the RFC assessment.

## III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 10th day of January, 2018.

*[signature]*

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE